IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CHRISTOPHER H. MCCOY,              §
                                  §
          Plaintiff,              §
                                  §
v.                                §          Case No. 3:20-cv-1051-B-BT
                                  §
K. ZOOK,                          §
*Warden FCI Seagoville*,          §
                                  §
          Defendant.              §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are (1) "Defendant's Motion to Dismiss Plaintiff's Motion for Injunctive Relief" (ECF No. 20), requesting the Court dismiss this civil action under Rules 12(b)(1) and 12(b)(6), and (2) Plaintiff's "Motion of Exhaustion of Administrative Remedies Complete As The Respondent Defaulted To Reply In A Timely Manner Or Inform The Petitioner of The Need of Extension of Time," (ECF No. 28) in which Plaintiff "moves this court to dismiss the Respondents [sic] 12(b)(6) motion as moot," and "issue summary judgment" in his favor, or "allow this to be heard by a public trial with a jury of twelve." For the following reasons, the Court should GRANT Defendant's motion to dismiss and DENY Plaintiff's "Motion of Exhaustion."

## Background

*Pro se* Plaintiff Christopher H. McCoy, an inmate at the Federal Correctional Institution in Seagoville, Texas (FCI Seagoville), is serving a 327-month sentence

1

for offenses related to child pornography and illicit sexual activity. Pl.'s Mot. Inj. 2-3 (ECF No. 3); Def.'s Mot. Dismiss 6 (ECF No. 20). He filed this civil action to require the FCI Seagoville Warden "to review the sex offenders at FCI Seagoville for early realease [sic], home confinement" in view of the COVID-19 pandemic. Pl.'s Mot. Inj. 9.

On March 26, 2020, in the early days of the nation's experience with the global pandemic, the United States Attorney General issued a memorandum in which he directed the Bureau of Prisons (BOP) to use its "various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic."[1] Def.'s Mot. Dismiss 14, n.11 (citing https://www.justice.gov/file/1262731/download). And he directed the BOP "to consider the totality of circumstances for each individual inmate, the statutory requirements for home confinement, and [a] . . . non-exhaustive list of discretionary factors." *Id.* 14. The Attorney General's list of discretionary factors included "[t]he inmate's crime of conviction, and assessment of the danger posed by the inmate to the community" and instructed that "[s]ome offenses, such as sex offenses, will render an inmate ineligible for home detention." *Id.* Shortly

---

[1] In September 1995, the BOP issued Program Statement 7320.01, titled "Home Confinement," which states that "Public Safety Factors as defined in the Security Designation and Custody Classification Manual" should be considered before placing an inmate on home confinement. Def.'s Mot. Dismiss 14, n.9 (citing https://www.bop.gov/policy/progstat/7320_001_CN-1.pdf). Status as a sex offender is one of the BOP's "public safety factors" listed in the Security Designation and Custody Classification Manual. *Id.* n.10 (citing https://www.bop.gov/policy/progstat/5100_008.pdf).

thereafter, on April 6, Warden Zook issued a memorandum to the FCI Seagoville inmates in which she summarized the Attorney General's March 26 memorandum and quoted the provision that sex offenders would be ineligible for home detention. *Id.* 15.

On April 27, 2020, McCoy filed his "Motion for Injuctive [sic] Relief," wherein he expresses concern about the spread of COVID-19 at FCI Seagoville, stating "[m]ore prisoners are contracting COVID-19 everyday [sic], even on a nationwide lockdown, and more prisoners are dying everyday [sic]." Pl.'s Mot. Inj. 8. The Court construes this motion as a complaint under Federal Rule of Civil Procedure Rule 3 because the motion is McCoy's first filing, and he has filed no other pleading. *See* Fed. R. Civ. P. ("A civil action is commenced by filing a complaint with the court."). Also, the motion includes a jurisdictional statement and states the statutory authority under which McCoy purports to bring his claims. Pl.'s Mot. Inj. 1, 4; *see United States v. Ayika*, 554 F. App'x. 302, 308 (5th Cir. 2014) (per curiam) (citing *Abdul-Alim Amin v. Universal Life Ins. Co. of Memphis, Tenn.*, 706 F.2d 638, 640 n.1 (5th Cir. 1983)) (stating a court has a "duty to construe pro se [filings] liberally so that a litigant will not suffer simply because he did not attend law school or find a suitable attorney"); *see also Muhammad v. Wiles*, --- F. App'x ----, 2021 WL 112523, at *4 (5th Cir. Jan. 12, 2021) (per curiam) (affirming district court's liberal construction of plaintiff's initial filing as a complaint because "[h]ad that court not done so, this suit would never have been commenced" (quoting Fed. R. Civ. P. 3)). Specifically, McCoy alleges "Warden

3

Zook, by her own admission, in a memo to the inmate population dated 4-6-20 (Home Confinement COVID-19) states that sex offenders will not be reviewed or recommended for early release due to the COVID-19 pandemic." *Id.* 4-5. And he contends Warden Zook violated his "5, 8, 14th constitutional protections . . . by categorically refusing to review [him] for 'Early Release' 'Home Confinement' due to the COVID-19 pandemic, based on the issue of a 'Memorandum' by Attorney General of the United States, William Barr." *Id.* 1-2. McCoy contends this "categorical[ ] refus[al] to review sex offenders is a violation of due process under the law, is arbitrary, capricious, and an abuse of discretion." *Id.* 3. McCoy brings his lawsuit "pursuant 5 U.S.C. §[§] 701-706 'the Administrative Procedure Act'" and requests the Court issue a "preliminary injunction and instruct [Warden Zook] to review the sex offenders at FCI Seagoville for early realease [sic], home confinement pursuant to [the] COVID-19 pandemic." *Id.* 1, 9.

Warden Zook moves to dismiss McCoy's lawsuit, arguing that this Court lacks jurisdiction to review his claims because "(1) the BOP has issued no final agency action, and (2) Congress has prohibited judicial review of the BOP's individualized determinations of home confinement eligibility." Def.'s Mot. Dismiss 7. Additionally, Warden Zook contends McCoy fails to state a claim because his "understanding of the BOP's rules on home confinement is incorrect."[2]

---

[2] On April 3, 2020, the Attorney General issued a second memorandum, stating that "the CARES Act now authorizes me to expand the cohort of inmates who can be considered for home release upon my finding that emergency conditions are materially affecting the functioning of the Bureau of Prisons." Def.'s Mot. Dismiss

*Id.* Warden Zook's motion is fully briefed and ripe for determination. Pl.'s Resp. (ECF No. 25); Def.'s Reply (ECF No. 27).

## Legal Standards and Analysis

Warden Zook seeks dismissal of McCoy's claim under both Rules 12(b)(1) and 12(b)(6). Def.'s Mot. Dismiss 7. When a party files a Rule 12(b)(1) motion in conjunction with other Rule 12 motions, the court should consider the jurisdictional challenge before addressing any attack on the merits. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citation omitted). This "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id.* (citation omitted). When a court dismisses for lack of subject-matter jurisdiction, that dismissal "is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper

---

15. He directed the BOP "to immediately review *all* inmates who have COVID-19 risk factors, as established by the [Centers for Disease Control and Prevention], starting with the inmates incarcerated at FCI Oakdale, FCI Danbury, FCI Elkton, and similarly situated facilities where you determine that COVID-19 is materially affecting operations." *Id.* (emphasis added). The Attorney General further stated that although the BOP's "assessment of these inmates should . . . be guided by the factors in [his] March 26 Memorandum," the BOP's "review should include *all* at-risk inmates—not only those who were previously eligible for transfer." *Id.* (emphasis added). The Attorney General's April 3, 2020 memorandum thus expanded the scope of inmates who were eligible for review so that it included "all at-risk inmates," without regard to their crime of conviction—although the BOP continues to consider classification as a sex offender when assessing whether it is appropriate to place an inmate on home confinement. *Id.* 16. It does not appear that McCoy was aware of the April 3, 2020 memorandum when he filed this action. But his subsequent filings suggest he later became aware of it, and he apparently concedes that "in reading both of AG Barr's memorandum [sic] to the Bureau of Prisons . . . all prisoners are eligable [sic]." Pl.'s 3d Motion To Supplement Pursuant Rule 15(d) Fed. R. Civ. P. at 4 (ECF No. 18).

jurisdiction." *Id.* (citation omitted). Accordingly, the Court addresses Warden Zook's jurisdictional argument first.

### 12(b)(1)

A motion to dismiss under Rule 12(b)(1) challenges a federal court's subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). The Court "must presume that a suit lies outside [its] limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) (citations omitted). The party asserting jurisdiction must allege the jurisdictional basis "affirmatively and distinctly"; it cannot be "established argumentatively or by mere inference." *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir. 1988) (citing *Ill. Cent. Gulf R.R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 & n.2 (5th Cir. 1983)).

The Fifth Circuit recognizes two types of challenges to a federal court's subject-matter jurisdiction—"facial" attacks, which are based solely on the pleadings, and "factual" attacks, which are based on affidavits, testimony, and other evidentiary material. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th

Cir. May 1981); *see also Ramming,* 281 F.3d at 161 (citation omitted) ("Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."). Whether the attack is facial or factual, however, the plaintiff seeking a federal forum "constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming*, 281 F.3d at 161 (citations omitted).

When a defendant files a Rule 12(b)(1) motion to dismiss without evidentiary materials supporting it—like Warden Zook did here—the attack is facial, and the Court need only consider the sufficiency of the allegations in the plaintiff's complaint. *See Paterson*, 644 F.2d at 523. If the defendant makes a factual challenge, to defeat it, "a plaintiff 'must prove the existence of subject-matter jurisdiction by a preponderance of the evidence' and is 'obliged to submit facts through some evidentiary method to sustain his burden of proof.'" *Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015) (quoting *Irwin v. Veterans Admin.,* 874 F.2d 1092, 1096 (5th Cir. 1989), *aff'd sub nom., Irwin v. Dep't of Veterans Affs.,* 498 U.S. 89, 96 (1990)).

### 18 U.S.C. §§ 3621, 3624, 3625

Warden Zook argues the Court should dismiss McCoy's lawsuit because "Congress has prohibited judicial review of the BOP's individualized determinations of home confinement eligibility, and therefore the Court lacks jurisdiction to review the individual determinations." Def.'s Mot. Dismiss 11.

McCoy acknowledges that "a designation of a place of imprisonment under [18 U.S.C. § 3621(b)] is not reviewable by any court," but contends that he "is <u>not</u> challenging his designation to FCI Seagoville." Pl.'s Resp. 6. "Rather, the Plaintiff is challenging the Defendants [sic] failure to adequately exercise the Defendants [sic] separate recently expanded statutory authority under subsection 3624(c)(2) to place inmates on home confinement." *Id.* 6-7. The Court finds it lacks subject-matter jurisdiction to review Warden Zook's decision regarding whether McCoy is eligible for home confinement.

The Administrative Procedure Act (APA) "provides that courts may not review agency action when '(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law.'" *Woody v. Wilson*, 2020 WL 2085571, at *3 (N.D. Tex. Apr. 30, 2020) (citing 5 U.S.C. § 701(a)). 18 U.S.C. § 3621 commits designation of a prisoner's place of imprisonment to the BOP's discretion and specifically precludes judicial review of that designation, stating "[n]otwithstanding any other provision of law, a designation of a place of imprisonment under this subsection *is not reviewable by any court*." 18 U.S.C. § 3621(b) (emphasis added); *see also Tapia v. United States*, 564 U.S. 319, 331 (2011) (Kagan, J.) ("When a court sentences a federal offender, the BOP has plenary control, subject to statutory constraints, over 'the place of the prisoner's imprisonment' . . . ." (quoting § 3621(b)). And § 3624 permits the BOP to "place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." 18 U.S.C. § 3624(c)(2). But § 3625

covers the BOP's decisions under both §§ 3621 and 3624 and expressly forecloses judicial review under the APA. 18 U.S.C. § 3625 ("The provisions of sections . . . 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter [18 U.S.C. §§ 3621-3626]."); *see also Boyer v. Santana*, 2018 WL 1525174, at *4 (N.D. Tex. Mar. 14, 2018) (citing *Jones v. Bureau of Prisons*, 2007 WL 965746 at *3 (E.D. Tex. Mar. 27, 2007)) ("Pursuant to 18 U.S.C. § 3625, the BOP's decision regarding a prisoner's custody designation is not reviewable under the APA."), *adopted by* 2018 WL 1517871 (N.D. Tex. Mar. 28, 2018).

Here, McCoy "brings this instant action pursuant 5 U.S.C. §[§] 701-706 'The Administrative Procedure Act'" and requests the Court enjoin Warden Zook "for violating [his] 5, 8, 14th constitutional protections" because Warden Zook "categorically refus[ed] to review [him] for 'Early Release' 'Home Confinement' due to the COVID-19 pandemic." Pl.'s Mot. Inj. 1-2. But "the law is clear that a prisoner has no constitutional right to be placed in any particular correctional facility"—including "confinement at a residential reentry center ('RRC')—a halfway house—*or at home*." *Teer v. Zook*, 2020 WL 2145376, at *2 (N.D. Tex. Apr. 1, 2020) (emphasis added) (first quoting *Lee v. English*, 2019 WL 3891147, at *9 (D. Kan. Aug. 19, 2019); then citing *Carey v. Quintana*, 2019 WL 1233846, at *2 (E.D. Ky. Mar. 15, 2019)), *adopted by* 2020 WL 2145337 (N.D. Tex. May 4, 2020); *see also Ambriz v. United States*, 465 F. Supp. 3d 630, 632 (N.D. Tex. 2020) (citing *Rublee v. Fleming*, 160 F.3d 213, 214 (5th Cir. 1998) (per curiam); *Zerby v. Keffer*, 2010

9

WL 3835235, at *2, (N.D. Tex. 2010), *adopted by* 2010 WL 3835148 (N.D. Tex. 2010)) ("[I]t is well settled that there is no constitutionally protected right to be confined in any particular place, including in-home confinement."). And though McCoy casts his claim as a violation of his constitutional rights, the Court understands his action to in fact challenge Warden Zook's "decision not to review and recommend sex offenders," particularly McCoy, "for early release [or home confinement] during this pandemic."[3] Pl.'s Mot. Inj. 5. But Warden Zook made her decision concerning McCoy's eligibility for home confinement pursuant to § 3624(c)(2), and "[b]ecause Plaintiff seeks review of the BOP's application of 18 U.S.C. § 3624(c) . . . to his particular case, 18 U.S.C. § 3625 precludes jurisdiction under the APA." *Chimney v. United States*, 2005 WL 2219259, at *2 (N.D. Tex. Sept. 9, 2005) (citing *Lundeen v. Mineta,* 291 F.3d 300, 304-05 (5th Cir. 2002) ("If [5 U.S.C. § 701(a)(1) applies], its statutory preclusion of judicial review would be jurisdictional in effect, requiring dismissal.")).

In his response, McCoy "concedes on the issue of 12(b)(1) that the 'Administrative Procedures [sic] Act' ('APA') is not applicable" and argues that he

---

[3] To the extent McCoy alleges the Attorney General's March 26 memorandum violated 42 U.S.C. § 1981, *see* Pl.'s Mot. Inj. 2-3 ("Whereby the language of the Attorney General's and the 'First Step Act' are discrimatory [sic] and unconstitutional, as it does not apply to all prisoners only a select group, thus violating the U.S. Constitution and 42 U.S.C. § 1981[.]"), the Court notes that "[s]ection 1981 claims do not lie against federal actors." *Farag v. United States*, 587 F. Supp. 2d 436, 471 (E.D.N.Y. 2008) (citing 42 U.S.C. § 1981(c) ("The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law."); *Dotson v. Griesa*, 398 F.3d 156, 162 (2d Cir. 2005)).

"is <u>not</u> challenging his designation to FCI Seagoville." Pl.'s Resp. 4, 6. Rather, he is "bring[ing] attention to the fact that [ ] Defendant is not adequately exercising [her] authority pursuant to § 3624," as expanded by "the [Coronavirus Aid, Relief, and Economic Security, or] CARES Act and [former] Attorney General William Barr's two memorandum [sic]." *Id.* 6. But, as stated, McCoy's filings make clear that he challenges his own home-confinement eligibility determination. *See* Pl.'s Mot. Inj. 2 ("The Defendant, has placed the Plaintiff in harms [sic] way by categorically refusing to review the Plaintiff for 'Early Release' 'Home Confinement' due to the COVID-19 pandemic . . . ."). And "the CARES Act and the memorand[a] issued by the attorney general both instruct and expand the authority of the director of the BOP, *not courts*, to release 'the most vu[l]nerable inmates at the most affected facilities.'" *Ambriz*, 465 F. Supp. 3d at 633 (emphasis added) (quoting *United States v. Stiger*, No. 3:12-cr-054-L, Doc. 1129 at 3-4 (N.D. Tex. Apr. 13, 2020) (Lindsay, J.)). Accordingly, the Court finds it lacks jurisdiction to review Warden Zook's decision regarding McCoy's eligibility for home confinement under § 3624(c)(2) and recommends the District Court dismiss McCoy's claims without prejudice. *See Boyer*, 2018 WL 1525174, at *4 (recommending dismissal of plaintiff's claims for judicial review of defendants' decisions pertaining to his custody classification without prejudice for lack of subject-matter jurisdiction); *see also United States v. Gentry*, 2020 WL 2131001, at *5-*6 (W.D. La. May 5, 2020) ("[V]arious courts have recognized a district court has no jurisdiction to order home confinement under the CARES Act, as that

11

decision is reserved to BOP." (citing *United States v. Read-Forbes*, 2020 WL 1888856, at *5 (D. Kan. Apr. 16, 2020); *United States v. Engleson*, 2020 WL 1821797, at *1 (S.D.N.Y. Apr. 10, 2020); *United States v. Hembry*, 2020 WL 1821930, *2 (N.D. Cal. Apr. 10, 2020); *United States v. Carter*, 2020 WL 1808288, at *2 (S.D. Ind. Apr. 9, 2020); *United States v. Garza*, 2020 WL 1485782, at *1 (S.D. Cal. Mar. 27, 2020))).

### 12(b)(6)

When deciding a 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig*., 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and citation omitted). To survive a Rule 12(b)(6) motion, therefore, a plaintiff's complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555).

This pleading standard does not require "detailed factual allegations," but it does demand more than an unadorned accusation devoid of factual support. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Where the facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the plaintiff is plausibly entitled to relief. *Id.* at 678 (citing *Twombly*, 550 U.S. at 556-57).

In deciding a Rule 12(b)(6) motion, a court may not look beyond the pleadings. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999) (citations omitted). However, the pleadings, for the purpose of determining a Rule 12(b)(6) motion, include documents attached to the pleadings and to the motion to dismiss so long as they "are referred to in the plaintiff's complaint and are central to [his] claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).

<u>Prison Litigation Reform Act</u>

Warden Zook contends the Court should dismiss McCoy's claim because the BOP has issued no final agency action "with respect to Plaintiff because Plaintiff has not exhausted his administrative remedies." Def.'s Mot. Dismiss 9. Because the two issues are necessarily interdependent, and McCoy would have had to exhaust his administrative remedies for there to be final agency action, the Court begins

13

with Warden Zook's exhaustion argument.[4] The Court finds McCoy failed to exhaust his administrative remedies before filing this lawsuit and, therefore, does not separately address the related lack of final agency action.

The Prison Litigation Reform Act (PLRA) provides "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). When a prisoner fails to exhaust his administrative remedies before filing suit without a valid excuse, the court may dismiss the action without prejudice as to its refiling once the prisoner complies with the exhaustion requirement. *See Wendell v. Asher*, 162 F.3d 887, 892 (5th Cir. 1998) *overruled by implication on other grounds by Jones v. Bock*,

---

[4] While "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court," *Jones*, 549 U.S. at 211 (citing *Porter*, 534 U.S. at 524), the PLRA's exhaustion requirement is nonjurisdictional and, therefore, properly addressed under Rule 12(b)(6). *See Woodford v. Ngo*, 548 U.S. 81, 101 (2006) (Alito, J.) ("Second, even if dismissals under § 1997e(c)(2) typically occur when the opportunity to pursue administrative remedies has passed, § 1997e(c)(2) still serves a useful function by making it clear that the PLRA exhaustion requirement is not jurisdictional . . . ."); *see also Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 n.6 (2010) (Thomas, J.) (footnote omitted); *Dawson Farms, LLC v. Farm Serv. Agency*, 504 F.3d 592, 597 (5th Cir. 2007) ("[S]ection 6912(e) is akin to non-jurisdictional statutory exhaustion provisions found in statutes like the Prison Litigation Reform Act.").

549 U.S. 199 (2007) (Roberts, C.J.). But when a prisoner can no longer comply with the exhaustion requirement, because the deadline for completing the administrative remedy has passed, the court may dismiss the suit with prejudice. *See Johnson v. La. ex rel. La. Dep't of Pub. Safety & Corr.,* 468 F.3d 278, 280-81 (5th Cir. 2006) (per curiam). Courts are not "to inquire whether administrative procedures satisfy minimum acceptable standards of fairness and effectiveness"; rather, "prisoner[s] must exhaust such administrative remedies as are available, whatever they may be." *Alexander v. Tippah Cnty.*, 351 F.3d 626, 630 (5th Cir. 2003) (per curiam) (internal quotation marks omitted) (citing *Booth v. Churner*, 532 U.S. 731, 740 n.5 (2001); *Wright v. Hollingsworth,* 260 F.3d 357, 358 (5th Cir. 2001)).

The Fifth Circuit has taken a strict approach to the exhaustion requirement. *Wilson v. Epps*, 776 F.3d 296, 299-300 (5th Cir. 2015) (citing *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010)); *see Ferrington v. La. Dep't of Corr.*, 315 F.3d 529, 531-32 (5th Cir. 2002) (per curiam) (affirming dismissal because inmate's "alleged blindness" did not excuse him from exhausting administrative remedies); *Richardson v. Spurlock*, 260 F.3d 495, 499 (5th Cir. 2001) (affirming dismissal because inmate's claim was precluded by his failure to exhaust administrative remedies where he "incorrectly filed an administrative appeal instead of a disciplinary appeal"); *Parker v. Adjetey*, 89 F. App'x 886, 887-88 (5th Cir. 2004) (per curiam) (affirming dismissal because inmate failed to exhaust his administrative remedies when he did not attempt to file a grievance after

recovering from a coma). Exhausting administrative remedies requires a prisoner to pursue that "grievance remedy to conclusion"; substantial compliance is inadequate to fulfill the requirement. *Wright*, 260 F.3d at 358. Even when a prison fails to respond to a prisoner's grievance at a preliminary step in the grievance process, the exhaustion requirement is not satisfied; "the prison's failure to timely respond simply entitles the prisoner to move on to the next step in the process." *Wilson,* 776 F.3d at 301. Nonetheless, "[e]xhaustion is defined by the prison's grievance procedures," and where the procedures do not afford a prisoner a next step, a court may determine that the prisoner complied with the PLRA's exhaustion requirement. *See Cowart v. Erwin*, 837 F.3d 444, 452 (5th Cir. 2016) (quoting *Cantwell v. Sterling*, 788 F.3d 507, 509 (5th Cir. 2015) (per curiam)).

As an inmate at FCI Seagoville, McCoy was required to exhaust the BOP's four-step grievance process prior to filing his lawsuit. *See Hicks v. Garcia*, 372 F. App'x 557, 557 (5th Cir. 2010) (per curiam) (citing 28 U.S.C. § 1997e(a)) ("Under the Prison Litigation Reform Act, inmates must exhaust 'such administrative remedies as are available' prior to bringing a civil action."); 28 C.F.R. §§ 542.10 *et seq.*; Pl.'s Mot. Inj. 13.  The process is as follows: A prisoner must first attempt to resolve his complaint informally with staff. 28 C.F.R. § 542.13(a). If that fails, the prisoner may then submit a "Request for Administrative Remedy" to the prison's warden. *Id*. §§ 542.13(a), 542.14. If the prisoner is not satisfied with the warden's response, he may appeal to the BOP's regional director. *Id*. § 542.15. If the prisoner

16

is also unsatisfied with the regional director's response, he may appeal to the BOP's general counsel. *Id.*

Here, McCoy attempted to resolve his grievance informally on April 15, 2020, and received a disposition the next day, April 16. Pl.'s Mot. Inj. 15, 17. McCoy then submitted a Request for Administrative Remedy on April 16, 2020. *Id.* 20. Next, McCoy filed this lawsuit on April 27, 2020, and admits in his initial filing that he is "bound by the 'Prison Litigation Reform Act' ('PLRA') and . . . must exhaust the administrative remedy process." *Id.* 1, 6. He further acknowledges that "continuing to exhaustion" can "take[] up to a year" and that he "must press on to comply with the 'PLRA.'" *Id.* While failure-to-exhaust is an affirmative defense under the PLRA, and "inmates are not required to specially plead or demonstrate exhaustion in their complaints," *Jones,* 549 U.S. at 216, McCoy admits that he did not exhaust his administrative remedies prior to filing suit.

In response to Warden Zook's motion, McCoy argues that he has complied with the PLRA, though he has not exhausted his administrative remedies, because "[a] prisoner need not exhaust remedies if they are not 'available.'" Pl.'s Resp. 9. Specifically, McCoy asserts the administrative process is "not 'capable of use'" in light of the "epic, rampant spread of COVID-19 at FCI Seagoville" because it is a "lengthy 4 step process, and the current circumstances present imminent danger to the Plaintiff." *Id.* 10. McCoy cites *Fletcher v. Menard Correctional Center*, 623 F.3d 1171, 1173 (7th Cir. 2010) (Posner, J.), to argue "there is no duty to exhaust in a situation of imminent danger," and "Valentine v. Collier, 2020 U.S. Dist LEXIS

17

68644 (S.D. Tx April 4, 2020)," to contend that he is "not . . . obligated to exhaust prior to bringing the action of preliminary injunctive relief" amidst the COVID-19 pandemic. Pl.'s Resp. 10-11.

The Court finds no Southern District of Texas opinion styled "*Valentine v. Collier*," dated April 4, 2020, and presumes McCoy intended *Valentine v. Collier*, 455 F. Supp. 3d 308 (S.D. Tex. 2020), dated April 20, 2020. In that case, the court found the Texas Department of Criminal Justice's (TDCJ) administrative remedy was "not 'capable of use' to obtain the relief Plaintiffs seek" because "of the alarming speed with which COVID-19 has ravaged our country and prisons"; as a result, "Plaintiffs were not obligated to exhaust prior to bringing [that] action." *Id*. at 320-21. But in determining whether to grant TDCJ's motion to stay the district court's preliminary injunction pending appeal, the Fifth Circuit held that "TDCJ's grievance procedure [was] 'available,' and Plaintiffs were required to exhaust" because "[r]elief by TDCJ . . . remain[ed] possible (and the procedure available), even if TDCJ has not acted as swiftly as Plaintiffs would like." *Valentine v. Collier*, 956 F.3d 797, 804-05 (5th Cir. 2020) (per curiam); *see also Valentine v. Collier*, 140 S. Ct. 1598, 1598 (2020) (denying application to vacate stay). The Fifth Circuit also found *Fletcher*, which is not binding on this Court, inapposite to *Valentine v. Collier*, because in *Fletcher*, the "State procedure could 'offer no *possible* relief' because State law prohibited a response to the grievance until two weeks after it was filed," whereas "TDCJ face[d] no legal bar to offering timely relief" and was "empowered to act on a grievance any time *up* to . . . the statutory limit." *Valentine*,

956 F.3d at 805 (citing *Fletcher*, 623 F.3d at 1174). The Court is aware of no law that would have prevented the BOP from offering McCoy timely relief.

Later when considering whether to stay the district court's permanent injunction, the Fifth Circuit came to the same conclusion concerning the PLRA's exhaustion requirement and found "[t]he district court impermissibly applied a 'special circumstances' exception" in determining the grievance process was unavailable because it was incapable of responding to the rapid spread of COVID-19. *Valentine v. Collier*, 978 F.3d 154, 161 (5th Cir. 2020) (citing *Valentine v. Collier*, --- F. Supp. 3d ----, 2020 WL 5797881, at *28 (S.D. Tex. Sept. 29, 2020)); *see also Valentine v. Collier*, 141 S. Ct. 57, 57 (2020) (denying application to vacate stay). Though "the spread of COVID-19 . . . is an emergency that demands prison officials' full attention," the district court erred because "emergencies are not 'license to carve out new exceptions to the PLRA's exhaustion requirement, an area where [court] authority is constrained.'" *Valentine*, 978 F.3d at 161 (quoting *Dillon*, 596 F.3d at 270). Thus, Fifth Circuit precedent is clear that the rapid spread of COVID-19 in a prison does not render that institution's grievance process "unavailable" for exhaustion under the PLRA, even if the process is "suboptimal." *Id.* at 162 ("[T]he CARES Act did not alter the PLRA. We thus remain bound by it, even in these unprecedented times.").

Here, McCoy acknowledges he failed to exhaust his administrative remedies prior to filing his lawsuit. His filings indicate that the grievance process was available and relief was possible because he completed the first two steps and

received a disposition concerning his attempt to informally resolve his grievance. Like the Fifth Circuit, this Court is bound by the PLRA "even in these unprecedented times." Accordingly, McCoy was required to exhaust his administrative remedies under the PLRA before filing this lawsuit. Because he failed to comply with the PLRA, McCoy's lawsuit should be dismissed. In view of the Court's recommendation that the District Court dismiss McCoy's claims for lack of subject-matter jurisdiction and for failure to exhaust his administrative remedies, the Court pretermits consideration of Warden Zook's remaining dismissal arguments.

Last, McCoy filed a "Motion of Exhaustion of Administrative Remedies Complete As The Respondent Defaulted To Reply In A Timely Manner Or Inform The Petitioner of The Need of Extension of Time," wherein he asks the Court to deny Warden Zook's motion to dismiss because "the 'exhaustion' requirement of the PLRA is now complete" and to "issue summary judgment" in his favor. Pl.'s Mot. Exhaust 3. Regardless of whether McCoy has now exhausted his administrative remedies, "[t]he PLRA requires a prisoner to exhaust administrative remedies prior to filing suit." *Muhammad*, 2021 WL 112523, at *2 (citing 42 U.S.C. § 1997e(a)). Because McCoy failed to exhaust his administrative remedies before filing suit, as discussed above, and in view of the Court's recommendation that McCoy's claims be dismissed for lack of subject-matter jurisdiction, the Court should DENY as moot McCoy's "Motion of Exhaustion."

## Recommendation

The Court should GRANT Warden Zook's motion to dismiss (ECF No. 20) and DISMISS McCoy's claims without prejudice. The Court should also DENY as moot McCoy's "Motion of Exhaustion" (ECF No. 28).

**SO RECOMMENDED.**

February 11, 2021.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk is directed to serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 14 days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation will bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the findings, conclusions, and recommendation within 14 days after being served with a copy will bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).